LEVERETT B. SIDWAY *et al.*

*v.*

THE AMERICAN MORTGAGE COMPANY OF SCOTLAND.

*Opinion filed June 14, 1906—Rehearing denied October 10, 1906.*

1. PRINCIPAL AND AGENT—*when an agent cannot claim commissions on unpaid interest.* An agent employed to loan money for his principal under a contract providing that he shall care for and manage the loans up to and including their maturity and collection, can not, after giving up the business, claim commissions on interest notes not then due and thereafter to be collected.

2. SAME—*agent not entitled to commissions unless he performs his duties.* An agent employed to loan money for his principal is entitled to his commissions only upon due and faithful performance of all the duties of his agency, and not where he has collected and retained money of his principal without reporting the same, and has represented loans as still outstanding which were in fact fully paid.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

LEE D. MATHIAS, (WILLETT H. CORNWELL, of counsel,) for plaintiffs in error.

BENTLEY & BURLING, for defendant in error.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

The defendant in error filed a bill for an accounting, in the circuit court of Cook county, against the plaintiffs in error. The plaintiffs in error answered denying that they had withheld any moneys from the defendant in error to which the latter was entitled, but alleging that the defendant in error was indebted to the plaintiffs in error in a large sum for services rendered, and that there was a large balance due the plaintiffs in error on such account. A general replication

was filed to this answer. The cause was thereupon referred to the master in chancery to take and report the evidence, with his conclusions. Objections were filed before the master and overruled by him, and these objections were renewed as exceptions in the circuit court, so as to preserve for review all questions now urged in this court by the plaintiffs in error. The circuit court followed the master's report in all particulars except as to some minor questions, and decreed that the plaintiffs in error pay the defendant in error the sum of $32,274.01, and the sum of $721.47 taxed as costs together with other costs of the suit. The Appellate Court for the First District has affirmed this decree, and the case is now before this court for a review of that judgment of affirmance.

The record is voluminous, and the abstract, containing 982 pages, correspondingly so. Nevertheless, the questions involved are simple, and no detailed statement of the evidence in this opinion is necessary for the proper understanding or disposition of them.

Defendant in error is a corporation organized under the Companies act of Great Britain and Ireland, with a capital stock of £85,000, with its principal place of business at Edinburgh, Scotland, engaged in loaning money. Plaintiffs in error composed a firm located in Chicago, Illinois, and this firm, and the two firms which successively preceded it and to whose business, rights and obligations it succeeded, acted as agents of the mortgage company in this country from 1882 until April, 1896. Leverett B. Sidway was the senior member of each of these firms. All of these firms will be included under the designation "the firm" in this opinion.

Plaintiffs in error contend, as stated above, that the moneys for which they were required to account were due them for services, and they classify these services under the following heads, to-wit: First, the Corbin farms; second, the Oregon frauds; third, the Southern inspection; fourth, the Arkansas usury cases; and fifth, miscellaneous services.

The critical question in the consideration of these claims is whether the agency existed pursuant to a letter dated December 21, 1881, being an offer on the part of Sidway, Bogue & Co., accepted by the defendant in error, as it contends, or whether the agency for loaning money was created by an alleged conversation or parol arrangement in 1884, between Leverett B. Sidway, one of the plaintiffs in error, and Mr. James Tait, representing the defendant in error. For a clearer understanding of the matter it should be stated that the firm of Sidway, Bogue & Co., formed in January, 1878, was composed of Leverett B. Sidway, one of the plaintiffs in error, and George M. Bogue, up to the time when H. T. Sidway, the other plaintiff in error, a son of Leverett B. Sidway, became a member of the firm. This firm was dissolved in July, 1893, and was succeeded by the firm of L. B. Sidway & Co., composed of the plaintiffs in error.

In their letter dated December 21, 1881, addressed to the defendant in error, Sidway, Bogue & Co., after referring to interviews in regard to loaning money for the defendant in error, stated: "We will undertake to make such loans upon five years' time, and to care for and manage them up to and including their maturity and collection, to the best of our ability, for a compensation of five per cent on the amount so loaned, such compensation to include all charges for making the necessary papers and the attorneys' charges for examining the title, the one-half of said charge to be collected from the borrower at the time the loan is made and the remainder to be collected by deducting one-fifth part of it from each annual coupon, when collected from the borrower." The letter further states: "No greater charge than five per cent on the amount loaned will be made, including the sum collected from the borrower and the sum deducted from coupons, or paid us in any manner by your company, and should it appear advantageous to change the manner of collecting the said compensation we will readily make any equitable change which may appear necessary." At the

close of the letter it is said: "We shall at all times take pleasure in advising your board of matters in America which may be of importance to the company's business, and shall aim to maintain such intimate business relations as are in our opinion necessary for securing the best permanent results."

The directors of the defendant in error, on January 11, 1882, accepted the foregoing offer, subject to the adjustment of the necessary details. In a letter from the secretary of the defendant in error to Sidway, Bogue & Co., care of L. B. Sidway, it was stated that Mr. Sidway had mentioned that it would be some little time yet before the firm would propose to operate for the defendant in error. There was some delay in commencing the business, so far as loaning money was concerned, but shortly after the acceptance of the offer the firm began to transact business for defendant in error in reference to loans and other property interests which it already had in the United States, and the loaning of money by the firm began in 1885.

On the part of the plaintiffs in error it is contended that the contract under which the firm operated after 1884 was a parol agreement, made between Leverett B. Sidway, representing his firm, and James Tait, representing the defendant in error, at the city of Chicago, in the year 1884, under and by virtue of which the defendant in error agreed to furnish Sidway, Bogue & Co. $400,000 each year for five years, to be loaned by them on five-year loans, on which the commissions of the firm would be $20,000 per annum, and by which the firm, from money so furnished and from collections from the principal after the first loans began to fall due, would have $400,000 to loan annually so long as the contract remained in force. And it is further contended by plaintiffs in error that the services rendered before this oral contract was made were rendered under an arrangement pertaining to those services alone, which arrangement did not contemplate the loaning of money.

222—18

Defendant in error did not furnish $400,000 to be loaned in any one year, and the firm seems to have made no complaint on this score. James Tait is dead, as are others who participated in these transactions, and the testimony of Leverett B. Sidway is the only direct evidence in the record as to the alleged parol agreement.

Nevertheless, the master in chancery and the circuit and Appellate Courts rejected his theory of the matter, and found that the services rendered were under and in pursuance of the proposition contained in the letter dated December 21, 1881. We are in accord with the Appellate Court in the views which it expresses in reference to the existence of the alleged oral contract, in the following language:

"The improbability that the evidence of so important a contract should be left to rest in parol testimony; the fact that the company had been making a continual breach of the supposed agreement for five years, and yet H. T. Sidway, on his visit to Edinburgh in 1889, made no direct reference to the arrangement of 1884 or its breach; the fact that a careful search failed to reveal anything in the files, records or correspondence of the company showing any reference to such a contract; Sidway's testimony to the effect that the terms of the contract, or its continual breach, or the failure of the company to pay for the extra services, never became the subjects of correspondence between the parties; that Bogue (Sidway's partner) never heard of the contract; all these, and other facts and circumstances appearing in the record, convince us that no such contract was made, and that the finding of the master to that effect is correct, under the evidence."

We agree also with the Appellate Court that the services relating to the Corbin farms and the Oregon frauds, which were of a special character, were settled and paid for long before this suit was commenced, and that the other services for which compensation is claimed, and which plaintiffs in error regard as special or extra in character, while not with-

in the provisions of the alleged oral agreement, are within the terms of the contract as expressed in the letter dated December 21, 1881, and that plaintiffs in error are therefore not entitled to any extra compensation therefor.

The only question remaining for consideration is the claim of the plaintiffs in error for $2111.56 commissions on unpaid interest, which claim is set forth in the statement of account rendered by plaintiffs in error under date of August 10, 1896. Prior to the time of making this charge the plaintiffs in error had given up the business of the defendant in error. Under the agreement set forth in the letter above mentioned, plaintiffs in error were to care for and manage the loans up to and including their maturity and collection. After giving up the business they could not claim commissions, under the contract, on interest notes not then due and thereafter to be collected.

But if it were otherwise, there is another reason why the plaintiffs in error are not entitled to these commissions. The evidence shows that they collected moneys belonging to the defendant in error but retained the same without making report thereof, and that they represented certain mortgage loans as still outstanding when in fact they had been fully paid to the firm. The course thus pursued was in gross violation of the duties owed to defendant in error. The law is that the agent is entitled to his commission only upon a due and faithful performance of all the duties of his agency in regard to his principal. (*Hafner* v. *Herron,* 165 Ill. 242; *Prescott* v. *White,* 18 Ill. App. 322.). "If the agent does not perform his appropriate duties, or if he is guilty of gross negligence or gross misconduct or gross unskillfulness in the business of his agency, he will not only become liable to his principal for any damages which he may sustain thereby, but he will also forfeit all his commissions." (Story on Agency, sec. 331; 1 Am. & Eng. Ency. of Law,—2d ed.— 1101.) "If the agent receives moneys and willfully suffers his principal for a long time to remain in ignorance that the

debtor has paid, it is but equitable that the agent should be charged with interest, as in this case there is a clear default and breach of duty." (1 Am. & Eng. Ency. of Law,—2d ed. 1094; *Bedell* v. *Janney,* 4 Gilm. 193.) "In the application of this rule it makes no difference whether the result of the agent's conduct is injurious to the principal or not; in such case the misconduct of the agent affects the contract from considerations of public policy rather than of injury to the principal." *Hafner* v. *Herron, supra; Young* v. *Hughes,* 32 N. J. Eq. 372.

Under the facts disclosed by this record the plaintiffs in error were not entitled to the commissions in question, and the same were properly disallowed.

There being no error in the record, the judgment of the Appellate Court is affirmed.          *Judgment affirmed.*