(No. 25966.-

KATHERINE STEINMETZ *et al.* Appellees, *vs.* JOHN J. KERN, Appellant.

*Opinion filed February 18, 1941.*

WILLIAM C. SCHERWAT, for appellant.

CAMPBELL, CLARK & MILLER, (GLENN G. PAXTON, of counsel,) for appellee Katherine Steinmetz.

Mr. JUSTICE SHAW delivered the opinion of the court:

The appellee Katherine Steinmetz, filed her complaint in the superior court of Cook county against the appellant, John J. Kern, to establish a constructive trust in certain real estate located in the city of Chicago and for an accounting. The cause was heard before the court and a decree was entered in accordance with the prayer of the complaint. Kern has appealed from that decree and appellee Steinmetz has filed a cross-appeal from that portion of the decree directing that Kern be given credit for the reasonable value of services rendered by him in connection with the transactions which led up to the filing of the complaint.

The pertinent facts are as follows: In 1930, Katherine Steinmetz and her husband purchased a thirteen-apartment building at 1424 Thome avenue in the city of Chicago at a price of approximately $99,000. It was encumbered by a mortgage of $51,500. Steinmetz died in February, 1931, and title then rested in Mrs. Steinmetz, solely, as the surviving joint tenant.

Mrs. Steinmetz was born in Luxemberg, came to America at the age of twenty-two and lived with her husband on a farm in Minnesota for a number of years. That farm was exchanged for greenhouse property in Chicago which was operated by her husband until the apartment building was acquired in 1930. Mrs. Steinmetz never learned to read English and never had any experience in business. She had two daughters, one married and living away from home, the other living with her during all the transactions which led up to this suit. This daughter had no business experience. Kern had acted as broker when the property was purchased by Mrs. Steinmetz and her husband and was thereafter retained by them to collect the rents and manage the property. After the death of Mrs. Steinmetz's husband, Kern continued to act as rental agent and received a commission of three per cent of the rents. A close and

friendly relationship developed between the families and, in 1932, Kern with his family, moved into an apartment in the building.

Mrs. Steinmetz testified that after her husband died, Kern told her that he would take care of all her business for her and this statement is corroborated by the subsequent dealings of the parties. In 1932, a suit in foreclosure was started to enforce the lien of a bondholder against the apartment house in question and Kern promised Mrs. Steinmetz that he would take care of the matter and arrange for an extension of time. He did some work on this and continued collecting the rents. He paid Mrs. Steinmetz $50 per month and accumulated the balance until in February, 1936, he had approximately $4000 belonging to her. On February 14, 1936, action was taken to proceed with the foreclosure. Kern then went to Mrs. Steinmetz and informed her what was going to happen but told her not to worry. A written agreement was entered into between Kern and Mrs. Steinmetz by which she was to give him a one-half interest in the property if he could save it for her by obtaining a new loan and paying off the old one. Pursuant to this agreement she signed a deed conveying a one-half interest to him but this deed was never recorded. The agreement which they signed was subsequently destroyed by him. Kern then bought some of the outstanding bonds with the money he was holding for Mrs. Steinmetz and, as he claims, with some of his own money. These bonds were transferred to an employee in Kern's office and that employee then proceeded with the foreclosure and Kern was appointed receiver. He claimed that these bonds were purchased with the understanding that he was to pay Mrs. Steinmetz off at the rate of $50 per month. This she denied.

On June 11, 1936, a decree of foreclosure was entered and on June 16, 1936, Mrs. Steinmetz signed a deed, at the request of Kern, conveying the property to one of his em-

ployees who subsequently conveyed it to one John T. Dieter, an admitted nominee of Kern. Kern claims that the consideration for that deed was that he would allow Mrs. Steinmetz to stay in one of the apartments at the rate of $50 a month until her equity, estimated by him at $500 was exhausted. This also was denied by Mrs. Steinmetz.

Mrs. Steinmetz testified that she did not know what the paper was that she signed and that Kern only told her that it was necessary to straighten matters out. Several days after this deed was signed, the agreement of February 14, 1936, was destroyed by Kern and according to Mrs. Steinmetz he told her he would make a new one and would have it recorded. Another deed which was not recorded but was allegedly made on November 5, 1936, from Mrs. Steinmetz to John T. Dieter was introduced in evidence. Mrs. Steinmetz did not remember signing this deed and the notary public before whom all deeds were acknowledged had no recollection of any of them.

The apartment house was sold to an outside bidder on July 9, 1936, for a consideration of $19,000 and in October, 1936, Kern obtained a $22,000-loan on the property and redeemed from the sale, leaving the title, clear of the previous mortgage, in John T. Dieter where it remained at the time this suit was started. Kern continued to pay Mrs. Steinmetz $50 a month, assuring her that everything was going to be all right. In the sumer of 1939, Mrs. Steinmetz discovered that a new mortgage for $25,000 was being put on the building and for the first time she consulted counsel. About a week later, Kern served a five-day notice on her and instituted a forcible entry and detainer suit. On August 10, 1936, Kern filed a voluntary petition in bankruptcy, but nowhere in his schedule of assets is any mention made of the bonds purchased with Mrs. Steinmetz's money nor of his claimed interest in this apartment house; neither was Mrs. Steinmetz listed as a creditor.

The appellant insists that these facts are not sufficient to establish a constructive trust and this is the only question raised by this appeal. As early as *Alwood* v. *Mansfield,* 59 Ill. 496, we announced the general rule that whenever the circumstances of a transaction are such that the person who takes the legal estate in property cannot also enjoy the beneficial interest without necessarily violating some established principle of equity, the court will immediately raise a constructive trust and fasten it on the conscience of the legal owner, so as to convert him into a trustee for the parties who, in equity, are entitled to the beneficial enjoyment. Constructive trusts are divided into two general classes; one where actual fraud is considered as equitable ground for raising the trust, and the other where there is a confidential relationship and the subsequent abuse of the confidence reposed is sufficient to establish such trust. (*Miller* v. *Miller,* 266 Ill. 522; *Neagle* v. *McMullen,* 334 id. 168; *Catherwood* v. *Morris,* 345 id. 617.) In general, a fiduciary or confidential relationship exists where trust and confidence are reposed by one person in another who, as a result, gains an influence and superiority over the other. (*Niland* v. *Kennedy,* 316 Ill. 253; *Pulfrey* v. *Wid,* 340 id. 553.) Particularly, as in this case, where by reason of friendship, agency, business association and experience, a high degree of trust is reposed, a confidential relationship may be said to exist; and the mere existence of such a connection prohibits the one trusted from seeking or obtaining any selfish benefit for himself during the course of the relationship and affords a basis for fastening a constructive trust upon the property. *Suchy* v. *Hajicek,* 364 Ill. 502.

The complaint charged, and there was ample proof, that a confidential or fiduciary relationship existed between Mrs. Steinmetz and Kern. The chancellor found that he abused and betrayed that confidence which was reposed in him by buying the bonds and putting himself in a position to redeem from the foreclosure sale. Had he been honest in

his dealings with her he undoubtedly could have enforced the agreement made on February 14, 1936, to convey a one-half interest in the property. The very fact that he chose to destroy that agreement and proceed to acquire title to the whole of the property is sufficient evidence of his bad faith. This case involves no questions of law that are not well settled and the facts have been found by a chancellor who heard the evidence in open court and his findings are fully and amply sustained by the evidence.

The question raised on cross-appeal remains as to whether Kern is entitled to be given credit for the services rendered by him to appellee. The evidence shows that Kern kept Mrs. Steinmetz ignorant of her affairs and deceived her as to how they were being handled. She did not know of the purchase of the bonds, or, if she did, she was not informed of the plan nor of the result of that deal. The course Kern pursued was in gross violation of the duty he owed to Mrs. Steinmetz as her agent. An agent is entitled to compensation only on a due and faithful performance of all his duties to his principal. (*Hafner* v. *Herron,* 165 Ill. 242.) In the application of this rule it makes no difference whether the result of the agent's conduct is injurious to the principal or not, as the misconduct of the agent affects the contract from considerations of public policy rather than of injury to the principal. (*Sidway* v. *American Mortgage Co.* 222 Ill. 270.) Under the facts disclosed by the record, the appellant was not entitled to compensation.

The decree of the superior court is affirmed except in so far as it made provision for the allowance of compensation to Kern, and as to that it is reversed. The cause is remanded to the superior court of Cook county, with directions to enter a decree in accordance with the views herein expressed.

*Affirmed in part, reversed in part and remanded, with directions.*